EDWARD F. THOMPSON, in equity,

*vs.*

EDGAR R. ROBINSON, and another.

Cumberland.    Opinion March 24, 1896.

*Fraudulent Conveyance.*

A conveyance made by a debtor for the express purpose of protecting his interest in the property against a pending suit is fraudulent and void as against the plaintiff in that suit, and equally fraudulent and void as against the debtor's assignee in insolvency.

IN EQUITY.    ON APPEAL BY DEFENDANTS.

Bill in equity, by the assignee in insolvency of Edgar R. Robinson, asking the court to declare void the conveyance of an equity of redemption in real estate from the insolvent to his mother, who was made a party to the bill. The bill alleged that the conveyance was made by the insolvent during the pendency of a suit arising from a breach of promise to marry and charged that it was made especially to defraud the plaintiff in the breach of promise suit. The material portions of the bill are as follows: —

"First: — That on the twenty-seventh day of November, A. D. 1894, the said Edgar R. Robinson on his own petition of that date was declared an insolvent debtor by our Court of Insolvency for said County of Cumberland, and that the complainant is assignee of said insolvent debtor, lawfully chosen and qualified and having filed a bond for the faithful performance of the duties thereof, which was approved by said court.

"Second: — That prior to the filing his said petition, to wit, on the second day of April, 1894, said Edgar R. Robinson being then the owner of the equity of redemption of the value of sixteen hundred dollars in and to a certain lot of land in said Portland [description of property] did with intent to delay, hinder and defraud his creditors fraudulently convey said equity of redemption to said Olive J. Robinson by deed bearing date the second day of April, 1894, and recorded in the registry of deeds for the County of Cumberland, book 612, page 57, a copy of which deed is filed as exhibit A with this bill.

"Third: — That at the time of said conveyance of said equity of redemption there was pending in the Superior Court for Cumberland County a certain suit begun on the fifth day of November, A. D. 1893, by Arletta Blake, of said Portland, against said Edgar R. Robinson, for breach of contract upon a cause of action which accrued previous to making said conveyance; that judgment was rendered in said suit in favor of said plaintiff against said Edgar R. Robinson on the third day of November, 1894, which said judgment remains in force and wholly unpaid, and still is wholly unsatisfied, and was proven against the insolvent estate of said Edgar R. Robinson and allowed by our Court of Insolvency in and for the County of Cumberland.  . . . .

"Fourth: — That your complainant is informed and believes it to be true, that said Edgar R. Robinson, at the time of said conveyance at said Portland, did then and there, with intent to delay, hinder and defraud his prior creditors, and particularly with intent to delay, hinder and defraud said Arletta Blake, then being a prior creditor as aforesaid, convey said equity of redemption to said Olive J. Robinson, and the said Olive J. Robinson was a party to said conveyance with the like intent to delay, hinder and defraud the prior creditors of said Edgar R. Robinson as aforesaid, and particularly to delay, hinder and defraud said Arletta Blake.

"Therefore your complainant prays:

1st.   That said respondents may answer the premises.

2d.   That said conveyance of said equity of redemption by said

Edgar R. Robinson to Olive J. Robinson may be declared void as against the complainant in his said capacity as assignee.

3rd.    That your complainant may have such further and other relief in the premises as the nature of his case shall require, and to your Honor shall seem meet."

"The answer of Edgar R. Robinson who says: first, he admits that on the twenty-seventh day of November, A. D. 1894, he was declared on his own petition an insolvent debtor by the Court of Insolvency for said Cumberland County and that the said complainant is assignee, lawfully chosen and qualified as he alleges and this defendant believes if he had any interest in any real estate or personal property at the time he was adjudged insolvent it became vested in the said assignee by his assignment in insolvency; and that he should not be required in this action to make any further or other transfer than that which is already made.

"In answer to the second complaint this defendant says: that on the twenty-eighth day of August, A. D. 1893, he made a purchase of the real estate in Bramhall Place described in complainant's bill; that this purchase was made for the benefit of Edgar Robinson and Olive J. Robinson, parents of this defendant, and that this defendant took the title to the said property in his own name on said twenty-eighth day of August, A. D. 1893, for the sake of convenience in perfecting the said purchasing and completing the same.    The purchase price of said property was five thousand dollars and was paid for in the following manner, to wit: Defendant gave the Portland Savings Bank of Portland a mortgage of three thousand dollars on the same bearing date the second day of April, 1894.    At the time of the purchase he assigned and transferred to said Meaher the Rice mortgage amounting to six hundred five dollars and eighty-nine cents and which belonged to his father, Edgar Robinson.    He gave a mortgage subject to the Bank mortgage to said Meaher for four hundred dollars; he paid E. G. S. Ricker one hundred dollars in cash to bind the bargain which money was taken from the Bank account of Olive J. Robinson; he also transferred the bank book of Olive J. Robinson to said Meaher on which were eight hundred ninety-two dollars and ninety-eight cents

and the balance amounting to one dollar and thirteen cents said Meaher received from the rent of the house. These several amounts make a total of five thousand dollars. It was agreed at the time of the transfer on the twenty-eighth day of August, A. D. 1893, that this defendant should manage the real estate, collect the rents and occupy the premises just the same as if all the papers had been completed and passed, that he should pay the interest on the mortgages, taxes, water rates and insurance in the same manner as if all the papers had passed. Though the business was done on the twenty-eighth day of August, A. D. 1893, the papers were not executed for the bank until the second day of April, A. D. 1894, but in the meantime the property was managed as if the business had been all completed on the twenty-eighth day of August, A. D. 1893. Much of the delay was caused by the absence of Mr. Noyes in the meantime.

"Edgar Robinson, father of this defendant, a part of whose money went into this property was away in Cuba at the time the trade was made and has been away from this city ever since. Olive J. Robinson, mother of this defendant, a part of whose money went into the purchase of this property has been sick much of the time and most of the business has been transacted by this defendant. The transfer of the property to Olive J. Robinson gives her so much of the property as belongs to her under her own payments and the rest she holds as trustee for her husband, Edgar Robinson, who is now in Cuba.

"This defendant, long about the last part of August, A. D. 1893, had five hundred ninety-three dollars and sixty cents in the Cumberland Loan and Building Association, which money defendant drew out and placed in the Portland Savings Bank. From this sum defendant owed Olive J. Robinson one hundred fifty dollars borrowed money with which he purchased a bicycle and he further owed a three years' board bill from August 4th, 1890, to August 4th, 1893, which would amount to six hundred twenty-four dollars at a low estimate; so what money he had in the Portland Savings Bank in his own name he transferred to Olive J. Robinson on the seventh day of October, 1893, and this defendant had no money of his own

VOL. LXXXIX.   4

or standing in his own name at the time these payments were made on the purchase price of the Bramhall Place property, so-called.

"After this defendant had completed the arrangements and made the final payments for the purchase of the aforesaid property, to wit, on the second day of April, A. D. 1894, he conveyed all his interest in the said property to his mother who holds the equity either in her own right or as trustee for her husband. Defendant says in doing this business he had no intention to delay, hinder or defraud any of his creditors and it was a simple act of justice when he made the conveyance, as he did, which is recorded in Book 612, Page 57, as complainant alleges. . . . ."

The answer of Olive J. Robinson one of the said defendants who comes and says . . . .

"Second:—She is informed and believes that the said Edgar R. Robinson held in his name and apparently in his own right, as far as the records go, an equity in the Bramhall Place property described in complainant's bill, but she is informed and believes to be true that he held said title simply as trustee for this defendant and for her husband, Edgar Robinson, who is now away in the West Indies and has been away since November, A. D. 1892, and she is informed and believes to be true that the said Edgar R. Robinson has no real interest or ownership in the aforesaid property and there was no transfer made by him to delay, hinder or defraud any of his creditors. . . . .

"Fourth:—This defendant denies that the said Edgar R. Robinson ever conveyed to this defendant the aforesaid property with the intent to delay, hinder or defraud his prior creditors or particularly with intent to delay, hinder or defraud the said Arletta Blake as said prior creditor, and this defendant further denies that she was any party to any conveyance with an intent to delay, hinder or defraud any prior creditor of the said Edgar R. Robinson or particularly to delay, hinder or defraud the said Arletta Blake, and this defendant further says that in receiving the conveyance of the aforesaid property in her name she held the same in part as her own in her own right and in part as trustee for her husband, Edgar Robin-

son, in which said capacity the same being conveyed to her indirectly by her husband, cannot be conveyed by her without his joining.

"This defendant is informed and believes that her title to said property commenced about the twenty-eighth day of August, A. D. 1893, and on the first day of September, A. D. 1893, she went into the possession and occupancy of the said property in Bramhall Place and has resided there making the same her home up to the present time.

"And this defendant further says that the aforesaid property is mortgaged for thirty-four hundred dollars, that her husband Edgar Robinson paid six hundred five dollars and eighty-nine cents towards the purchase price in his transfer of the Rice mortgage, and that she paid over nine hundred ninety-four dollars and eleven cents on the purchase price, a part of which money belonged to her husband, and a part of which belonged to herself, and if the said complainant wishes for a re-conveyance or conveyance of this property to him, she respectfully asks that the Court will order a decree that he repay to her all the money that she has paid out either on her own account, or on her husband's account or their joint account, in procuring the same."  . . . .

The case was heard in the court below on bill, answer and proof, where a decree was made sustaining the bill. The defendants appealed.

The proof to sustain the bill consisted of copies of the deeds referred to in the bill, and the insolvent's examination in the proceedings in the court of insolvency. The deed sought to be vacated was a quitclaim, in which the consideration was stated to be one dollar.

The following is a portion of the insolvent debtor's examination:

"Ques. 118.  On the 2nd day of April, 1894, you made a transfer of this property to Olive J. Robinson in consideration of one dollar.  What did you receive for that property from Olive J. Robinson?

Ans.  I didn't receive anything from her.

Ques. 119.   Why did you make the transfer?

Ans.   To protect her.

Ques. 120.   Against what?

Ans.   Against anything that would come up against me.

Ques. 121.   What were you expecting?

Ans.   I was expecting this breach of promise suit.   These papers were made over before this case came up.

Ques. 122.   How long had you been aware that it had been coming up?

Ans.   They told me at the time of the separation that they were going to sue me.

Ques. 123.   What was the date of the separation?

Ans.   May '92 I think.

Ques. 124.   Then there was nothing passed from your mother to you at the time this transfer was made to her?

Ans.   No sir."

The defendants offered no proof.

*Wilford G. Chapman*, for plaintiff.

Counsel cited:   *Wheelden* v. *Wilson*, 44 Maine, 1;   *Hall* v. *Sands*, 52 Maine, 358;   *French* v. *Holmes*, 67 Maine, 190.   The burden is upon Mrs. Robinson to show that the deed is not fraudulent.   *Laughton* v. *Harden*, 68 Maine, 212;   *French* v. *Holmes*, supra;   *Jones* v. *Light*, 86 Maine, 437.

*D. A. Meaher*, for defendants.

Counsel cited:  *Society* v. *Woodbury*, 14 Maine, 281; *Buck* v. *Swazey*, 35 Maine, 41 ; *Baker* v. *Vining*, 30 Maine, 121; *Dwinel* v. *Veazie*, 36 Maine, 509 ; *Brown* v. *Lunt*, 37 Maine, 423; *Corey* v. *Greene*, 51 Maine, 114; *Brown* v. *Dwelley*, 45 Maine, 52; *Dudley* v. *Bachelder*, 53 Maine, 403 ; *Kelley* v. *Jenness*, 50 Maine, 455; *Webster* v. *Folsom*, 58 Maine, 230 ; *Rice* v. *Perry*, 61 Maine, 145 ; *French* v. *Holmes*, 67 Maine, 186; *Griffin* v. *Nitcher*, 57 Maine, 270 ; *Gardiner Bank* v. *Hagar*, 65 Maine, 359 ; *Stevens* v. *Robinson*, 72 Maine, 381 ; *First National Bank of Lewiston* v. *Dwelley*, 72 Maine, 223; *Gibson* v. *Bennett*, 79 Maine, 302 ; *Houghton* v. *Davenport*, 74 Maine, 590 ; *Robinson* v.

*Robinson*, 73 Maine, 171 ; *Boynton* v. *Rees*, 8 Pick. 329 ; *Garner* v. *Providence Second National Bank*, 151 U. S., 420 ; *Jones* v. *Simpson*, 116 U. S., 609 ; *Powden* v. *Johnson*, 2 N. J. L. J., 48 ; *Kimball* v. *Davis*, 19 Wend. 437 ; *Brown* v. *Kimball*, 25 Wend. 259 ; *Jenkins* v. *Eldredge*, 3 Story, 181 ; *United States* v. *Jones*, 3 Wash. 209 ; *State* v. *Knight*, 43 Maine, 11 ; *Bell* v. *Woodman*, 60 Maine, 465 ; *Brown* v. *Bellows*, 4 Pick. 179 ; *Whitaker* v. *Salisbury*, 15 Pick., 534 ; *Com.* v. *Starkweather*, 10 Cush. 59 ; *Com.* v. *Welsh*, 4 Gray, 535 ; *Brolley* v. *Lapham*, 13 Gray, 294 ; *Whitney* v. *Eastern Railroad*, 9 Allen, 364.

SITTING : PETERS, C. J., WALTON, HASKELL, WHITEHOUSE, WISWELL, JJ.

WALTON, J. It appears that Arletta Blake has recovered a judgment against Edgar R. Robinson for the modest sum of $325, as damages for the breach of a promise to marry her. It also appears that in less than a month after the recovery of the judgment, the defendant went into insolvency on his own petition, and that the plaintiff in the present suit was appointed his assignee. The assignee asks the court to declare void the conveyance of an equity of redemption of real estate from the insolvent to his mother, made pending the breach of promise suit, on the ground that it was fraudulent, and made especially to defraud the said Arletta Blake, and thereby prevent her from levying upon the equity of redemption so conveyed to satisfy her judgment, if she should recover one, in her then pending breach of promise suit.

The cause was fully heard in the court below by Mr. Justice FOSTER ; and he found as a matter of fact that the conveyance was fraudulent ; and ordered the insolvent debtor's mother to execute and deliver to his assignee a deed of her pretended title to the equity of redemption so conveyed to her, free and clear of all incumbrances created by her, or by persons claiming by, through, or under her. From this decree the defendants appealed.

We have examined the evidence with care, and we can not for a moment doubt that the conveyance was made for the express purpose of protecting the grantor's interest in the property against the

breach of promise suit. Such being its purpose, it was, of course, fraudulent and void as against the plaintiff in that suit, and equally fraudulent and void as against the defendant's assignee in insolvency; and our conclusion is that the decree of Mr. Justice Foster in the court below was right, and must be affirmed.

*Decree affirmed, with additional costs since the appeal.*